UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JUAN REYES GAYTAN, | Case No.  1:25-cv-2041-DC-JDP |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MICHAEL KNIGHT, *et al.*, | |
| Respondents. | |

Petitioner Jose Juan Reyes Gaytan, an asylum applicant who has lived in the United States for the past seven years, was arrested and re-detained by ICE.  He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a hearing violates the Fifth Amendment and seeking immediate release.  For the reasons outlined below, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Mexico, entered the United States in 2018 after crossing the Mexican border with his family.  ECF No. 1 ⁋ 15.  Federal agents detained petitioner and his family at the border, and DHS released him with a Notice to Appear.  ECF No. 6-1 at 3.  On August 20, 2025, an immigration judge ordered petitioner removed to Mexico.  ECF No. 6-1 at 3.  Petitioner appealed that decision on September 15, 2025, and it remains pending with the Board of Immigration Appeals.  *Id.*

On November 25, 2025, petitioner was driving to work.  That morning, ICE, Enforcement

1

and Removal ("ERO"), and CBP officers conducted a "targeted operation" to arrest petitioner. ECF No. 6-1 at 2. *Id.* When the officers saw petitioner, they stopped his vehicle—while wearing body armor—and asked petitioner to identify himself. *Id.* Petitioner complied and provided his identification card. *Id.* Without incident, officers arrested petitioner. *Id.* He has been in detention ever since.

Petitioner has applied for asylum, has no criminal history, and has complied with all reporting requirements.[1] ECF No. 1 ₱ 27; ECF No. 6-1 at 2. He has lived in the United States for over seven years and is the father to three children. ECF No. 1 at 27.

### Procedural History

On December 27, 2025, petitioner filed a petition for habeas corpus, ECF No. 1. Shortly thereafter, the court served the petition on the United States Attorney and directed the government to respond to the petition. ECF No. 4. The government has filed a motion to dismiss, ECF No. 6, and petitioner has filed a traverse, ECF No. 7.

### Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a

---

[1] The government argues in its motion to dismiss that petitioner was arrested for violating the terms of his alternative detention program. ECF No. 6 at 2. In support, the government relies upon this statement in petitioner's Form I-831: "AVILA violated the conditions of the ERO Bakersfield ATD program." *Id.* But later in the report, the form states "REYES violated the conditions of the ATD program." *Id.* Petitioner attested in his declaration that he "always reported [himself] to the immigration," he "complied with all orders," and he always "report[ed] on that same day as [he] was instructed." ECF No. 1 at 27.

The court is unsure what to make of the government's argument. Petitioner declares that he has complied with all reporting requirements, but more importantly, the form the government relies on includes conflicting accounts. It first identifies "AVILA" as the individual who violated the program, but then later says that it was petitioner. "Avila" does not appear to be any name listed for petitioner or his family. To be sure, the form contains no description or date of *any* individual's alleged violation. Accordingly, the court will give little weight the government's argument that petitioner violated his reporting requirements.

petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### Analysis

Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-detaining him without notice and a hearing.[2]  ECF No. 1 at 20-21.  Notably, the government has offered no response to petitioner's due process claim.  Instead, respondents advance an argument premised on an assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he was re-detained under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 6 at 2. The government relies on other district court decisions making similar determinations and on *In re Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), a decision that has been since vacated, *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026).  The government does not explain what, if any, alternative grounds support its statutory position.  More fundamentally, the government fails to address how its statutory argument responds to petitioner's constitution-based argument.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the

---

[2] Petitioner also advances other arguments, including a statutory argument, contending that his detainment is governed by 8 U.S.C. § 1226(a) rather than by 8 U.S.C. § 1225(b)(2)(A), and that he therefore is entitled to a bond hearing before an immigration judge.  ECF No. 1 at 25. Because I am recommending that the petition be granted on the grounds of due process alone, I find it unnecessary to reach petitioner's remaining arguments.

liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Morrissey*, 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that non-citizens released from ICE custody acquire a liberty interest in their continued release.  *See, e.g.*, *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025); *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Valencia Zapata*, 2025 WL 2741654, *6; *Shoimov v. Chestnut*, No. 1:25-cv-1603 CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in 2018.  ECF No. 1 ⁋ 23.  He has lived in the United States, subject to ICE supervision but outside of custody, for

4

over seven years.  During that time, petitioner has formed "enduring attachments of normal life" while living in the United States.  *See Morrissey*, 408 U.S. at 482.  I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.  *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released non-citizens to have strong liberty interests).

Once a court has found that a non-citizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the non-citizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been released in the United States under the supervision of ICE for over seven years prior to his re-detention.  During that time, he applied for asylum and worked to support his family, including his three children.  *See Salazar v. Casey*, No. 25-cv-2784-JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025)

("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Petitioner was released on his own recognizance after his initial detention at the border. Prior to releasing petitioner, immigration officers necessarily determined that he was neither a flight risk nor a danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). And in the intervening years, there has been no indication that he has become a flight risk or a danger to the community. *See Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the petitioner presented a danger to the community or a flight risk). Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 2025 WL 3254999, at *7 ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Respondents neither argue that petitioner is now a danger to public safety or a flight risk nor do they show that a hearing has been afforded petitioner since his detainment on November 25, 2025. *See* ECF No. 6. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id.*

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no

6

information about the additional burden that would fall on them as a result of being required to provide additional procedural safeguards.

A consideration of the *Mathews* factors demonstrates that petitioner is entitled to notice and an opportunity to be heard before re-detention. Accordingly, petitioner has demonstrated that respondents violated his Fifth Amendment Due Process rights.

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted and that petitioner be immediately released from respondents' custody. If respondents seek to re-detain petitioner, they should be required first to provide him with written notice and a hearing before a neutral adjudicator. At any such hearing, the government should be required to bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner should be allowed to have his counsel present.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents' motion to dismiss, ECF No. 6, be DENIED.

3. Respondents be ordered to immediately release petitioner from their custody under conditions no stricter than those to which he was subject to prior to his November 25, 2025 detention.

4. Respondents be enjoined and restrained from re-arresting or re-detaining petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed

within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    February 25, 2026                    _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE